**UNITED STATES of America,**
**Appellee,**

v.

**David HANDEL, Appellant.**

**No. 804, Docket 72-1146.**

United States Court of Appeals,
Second Circuit.

Argued May 15, 1972.

Decided June 13, 1972.

J. H. Topkis, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, New York City), for appellant.

Peter L. Truebner, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. S. D. N. Y., Maurice M. McDermott and John W. Nields, Jr., Asst. U. S. Attys., of counsel), for appellee.

Before MOORE, SMITH and HAYS, Circuit Judges.

### J. JOSEPH SMITH, Circuit Judge:

David Handel, former horse owner and racetrack bettor, appeals from a judgment of conviction entered on December 14, 1971 after trial to a jury in the United States District Court for the Southern District of New York, Inzer B. Wyatt, Judge. Appellant was found guilty of conspiracy (18 U.S.C. § 371) to defraud the United States in the ascertainment and collection of revenue information by causing the preparation and filing of false United States Information Returns (Form 1099) (26 U.S.C. § 7206(2) and 18 U.S.C. § 2). He was acquitted on the only substantive count which went to the jury, charging that on April 7, 1965 he had caused the preparation and filing of a Form 1099 which fraudulently concealed the name of the true owner of a winning pari-mutuel twin double ticket at Yonkers Raceway.[1] Sentenced to one year imprisonment, appellant is presently enlarged on bail pending the outcome of this appeal. We find no error and affirm his conviction.

The indictment alleged appellant's participation in a scheme operative during 1964 and 1965 at Yonkers and Roosevelt Raceways whereby he would procure after the first two races of the twin double were run potentially winning tickets at a discount, and, working through a middleman, often one Elvin, a co-defendant who pled guilty to the conspiracy count and testified for the government, have the winning tickets cashed by various other individuals ("cashers"); the winnings would then be reported to the Internal Revenue Service on the required Form 1099, filed by the racetrack, as income to the cashers rather than to the actual recipients of those winnings. Four of the seven cashers who were named in the conspiracy count also testified for the government.

Appellant's principal reliance is on his contention that his pre-trial motion to dismiss the indictment for violation of his Sixth Amendment right to a speedy trial was wrongfully denied when thirty months had elapsed between his arrest and indictment, and an additional thirty-four months were to pass before the date set for trial.

██ The speedy trial provision of the Sixth Amendment applies only after a formal indictment or information has issued, or after the imposition of the "actual restraints" of an "arrest and holding." United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Inasmuch as the government acceded to appellant's request to dismiss the complaint on which he was arrested in 1966 in order to avoid causing him any economic hardship pending presentation of his case to the grand jury,[2] appellant may not rely on pre-indictment delay in asserting his Sixth

---

1. The government offered no proof on five other substantive counts, which were dismissed by the court.

2. The existence of outstanding criminal charges against him had apparently led to appellant's suspension by the New York State Harness Commission. When the government moved to dismiss the complaint, one of the principal threats against which the speedy trial requirement is intended to protect the accused, that of economic hardship, was eliminated. Of the remaining dangers commonly said to be safeguarded by the Sixth Amendment, appellant suffered from one only, anxiety at the knowledge he was the target of a criminal investigation. See United States v. Marion, 404 U.S. 307 at 320, 92 S.Ct. 455, 30 L.Ed. 2d 468. In Marion, where the defendants had been exposed in the newspapers as the object of a purported criminal investigation three years before their indictment, anxiety or concern without a standing formal accusation was not deemed enough to invoke the Sixth Amendment.

Amendment claim. Absent a showing of actual prejudice violative of the Due Process Clause of the Fifth Amendment, appellant is dependent on the safeguard of the applicable statute of limitations, not exceeded here,[3] to protect against any possible prejudice from pre-indictment delay.[4]

■■ The basic elements of a sound speedy trial claim based on post-indictment delay set forth in United States ex rel. Solomon v. Mancusi, 412 F.2d 88, 90 (2d Cir.), cert. denied, 396 U.S. 936, 90 S.Ct. 269, 24 L.Ed.2d 236 (1969) are not present here. We are confronted immediately by appellant's failure to demand a trial. Without compelling countervailing considerations, prior to July 5, 1971 when new circuit speedy trial rules became effective, we have consistently viewed such a failure as a waiver of the right to a speedy trial. See, e. g., United States v. Binder, 453 F.2d 805, 809 and n. 5 (2d Cir. 1971); United States v. Smalls, 438 F.2d 711, 714 (2d Cir.), cert. denied, 403 U.S. 933, 91 S.Ct. 2261, 29 L.Ed.2d 712 (1972); United States v. Aberson, 419 F.2d 820, 821 (2d Cir. 1970); United States v. Maxwell, 383 F.2d 437, 441 (2d Cir. 1967), cert. denied sub nom. Aiken v. United States, 389 U.S. 1043, 88 S.Ct. 786, 19 L.Ed.2d 835 (1968); United States v. Lustman, 258 F.2d 475, 478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). Although the government's unexplained twenty-eight month delay in preparing for trial[5] might in some circumstances be unreasonable, there is no suggestion here that the delay was deliberately oppressive. See United States v. Dooling, 406 F.2d 192, 196 (2d Cir.), cert. denied sub nom. Persico v. United States, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969). The crucial element of appellant's claim is alleged prejudice resulting from the death of a potential witness during the period of post-indictment delay. We are entirely unpersuaded that there is any demonstrable prejudice here requiring us to overlook appellant's failure to demand a trial. Had the witness been available, appellant insists, he would have testified that despite their frequent association at the racetrack he had never seen appellant deal with any of the alleged cashers. Even accepting appellant's prediction as wholly accurate, the lost purely negative testimony would clearly not have exonerated him. At best what the witness had failed to see, claimed to be inconsistent with the testimony of five government witnesses, might have affected their credibility. Such a minimal showing of possible prejudice will not suffice to overcome appellant's waiver of his right to a speedy trial.

■ The argument that because appellant was acquitted on the substantive count of the indictment, which had involved the preparation of a false Form 1099 on April 7, 1965, the government as a matter of law cannot have proved the commission of the only overt act put to the jury to support the conspiracy count, namely that appellant went to the raceway on the night of April 7, 1965, borders on the frivolous. The real objection seems to be to the alleged inconsistency of the verdict, but that is no ground for reversal. United States v. Carbone, 378 F.2d 420 (2d Cir.), cert. denied, 389 U.S. 914, 88 S.Ct. 242, 19 L.Ed.2d 262 (1967).

■ Lastly, while conceding that the government could properly bring out on direct examination of Elvin that he had been convicted of perjury, appellant contends that it was unfair to elicit the circumstances of the perjury, namely that he had lied to the grand jury about his

---

3. 18 U.S.C. § 3282 (5 years).

4. The reach of Rule 48(b) of the Federal Rules of Criminal Procedure, also relied on by appellant is identically circumscribed. United States v. Marion, 404 U.S. at 319, 92 S.Ct. 455.

5. Although appellant complains of a longer delay, the government announced in February, 1971 that it would be ready to proceed to trial any time after April 1st, subject to 20 days notice; the October trial date was fixed without objection by appellant.

relationship with appellant. Appellant, however, demonstrated on cross-examination that Elvin's perjury might well have been unrelated to appellant; moreover appellant clearly relied on the perjury conviction to discredit Elvin. In any case review is foreclosed by appellant's failure to make any proper objection below. United States v. Indiviglio, 352 F. 2d 276 (2d Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

The judgment is affirmed.