**UNITED STATES of America**

v.

**Fred R. DORNAU et al., Defendants.**

No. 69 Cr. 718.

United States District Court,
S. D. New York.

March 2, 1973.

On Motion for Reconsideration
April 2, 1973.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., for the United States; John J. Kenney, Asst. U. S. Atty., of counsel.

London, Buttenwieser & Chalif, New York City, for defendants; Franklin S. Bonem, New York City, of counsel.

METZNER, District Judge:

On October 10, 1969, Indictment 69 Cr. 718 was filed charging the defendants Fred Dornau and Ra-Dor Industries, Inc. (Ra-Dor) with unlawfully making and presenting claims to a United States government agency for payment for the furnishing of missile shipping and storage containers, knowing said claims to be false (Counts 1–29), and with uttering and publishing as true a forged contract between Ra-Dor and the United States (Count 30). The indictment further charged Fred Dornau, Peter Dornau and Ra-Dor with mail fraud (Counts 31–41) and wire fraud (Counts 42–45).

The instant pre-trial motions are made on behalf of the individual defendants, Fred and Peter Dornau. The corporate defendant is currently in bankruptcy and has not pleaded to the indictment. Fred Dornau was the president of Ra-Dor Industries and Peter Dornau the secretary-treasurer. Both were actively engaged in its business.

I. *Pre-Indictment Delay*

Both defendants have moved this court, pursuant to the Sixth Amendment and Rule 48(b), Fed.R.Crim.P., for an order dismissing the indictment because of the delay in indicting them after the commission of the alleged illegal acts. The indictment was filed on October 10, 1969. Counts 1–29 therein charge the defendants Fred Dornau and Ra-Dor with making false claims to the government from October 29, 1965 to March 11, 1968. Count 30 charges the same defendants with uttering a false contract modification on May 22, 1968. Finally, Counts 31–45 charge all of the defendants with defrauding securities

investors by use of the mails from September 13, 1967 to March 14, 1969, and with wire fraud in December 1968 and January 1969.

The government alleges that its investigation of this case commenced in January 1968, and that the defendants were interrogated by the FBI in connection with the charges contained in the indictment in June 1968.

In United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1972), the Supreme Court held that the Sixth Amendment is inapplicable to "pre-accusation" delays. The reach of Rule 48(b) is similarly circumscribed. 404 U.S. at 319. See also, United States v. Handel, 464 F.2d 679, 681 (2d Cir.), cert. denied, 409 U.S. 984, 93 S.Ct. 326, 34 L.Ed.2d 249 (1972). The Court indicated that the statute of limitations is the primary safeguard against the bringing of overly stale criminal charges. *Cf.* United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

However, the Court in *Marion* explicitly left open the possibility that a demonstration of "actual prejudice" stemming from pre-accusation delay might require a dismissal under the Fifth Amendment. 404 U.S. at 324, 92 S.Ct. 455, 30 L.Ed.2d 468. See also United States v. Schwartz, 464 F.2d 499 (2d Cir.), cert. denied, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972). Under this standard the defendants have the burden of showing that they were actually prejudiced by the delay preceding the indictment. They argue that they have been prejudiced because one-half of the business records of Ra-Dor were destroyed prior to the filing of the indictment. Ra-Dor went into bankruptcy prior to the indictment and a trustee came in sometime in September 1968. At that time he took the company records which he needed and left the others at the place of business, where they were later destroyed by a new tenant. The defendants contend that if the government had not waited so long to indict them, these records could have

been saved. As a result of this destruction, they claim that they cannot adequately combat the charges against them.

The Second Circuit has indicated that to support a claim of prejudice, a defendant must make a particularized showing either that a key defense witness or valuable evidence has been lost during the delay, or that the defendant is unable to reconstruct the events surrounding the alleged offense. United States v. Feinberg, 383 F.2d 60, 65 (2d Cir. 1967), cert. denied, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968). A bare allegation that records have been lost or destroyed, which might relate to the instant prosecution, is insufficient to show actual prejudice. See United States v. Schwartz, *supra.* The defendants here have made no effort to identify the alleged lost records nor have they indicated how they are prejudiced by their loss. The fact that evidence may be lost or destroyed during the pre-indictment stage is inherent in any delay, no matter what the duration. United States v. Marion, *supra*, 404 U.S. at 321, 326, 92 S.Ct. 455, 30 L.Ed.2d 468. Furthermore, there has been no allegation in this case that the destruction of the records was deliberate on the part of either the government or trustee.

Finally, the moving papers themselves show that Fred Dornau was interrogated by the FBI at least by August 1968 with respect to the facts involved in this indictment. This was over a year before the indictment was returned, and at least a month before the trustee took over. They could reasonably have taken steps during this period to secure the records of Ra-Dor or, at least, to familiarize themselves with their contents. The defendants have failed to demonstrate actual prejudice. Accordingly, the motion to dismiss for pre-indictment delay is denied.

II. *Post-Indictment Delay in Bringing Peter Dornau to Trial*

Defendant Peter Dornau has also moved to dismiss the indictment for

post-indictment delay in bringing him to trial before April 12, 1972 in violation of Rule 48(b) and the Sixth Amendment. This defendant has waived any delay subsequent to that date. He alleges that the government was ordered in December 1969 to file a bill of particulars which it did not file until September 1971. Furthermore, that bill was subsequently found to be insufficient and by order of the court on December 6, 1971 a supplemental bill of particulars was filed on February 3, 1972. The defendant claims that the documents attached to the supplemental bill were illegible, and that it was not until April 12, 1972 that new photocopies were made available. Finally, he claims that it was not until August 11, 1972 that the government "finally produced other documents it had agreed to produce." The government does not dispute the factual background set forth above, instead it claims that the delay in furnishing the information was not prejudicial.

In order to determine whether a defendant's right to a speedy trial has been violated under the test set out by the Supreme Court in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L. Ed.2d 101 (1972), we must consider four factors: (1) length of delay; (2) reason for delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. *Cf.* United States v. Fasanaro, 471 F.2d 717 (2d Cir. 1973).

### (1) *Length of the Delay*

As the Supreme Court observed in *Barker*, "length of the delay is to some extent a triggering mechanism." and there must be some period of delay which is "presumptively prejudicial" before an inquiry is necessary into the other factors. 407 U.S. at 530, 92 S.Ct. at 2192. In the instant case, the delay spanned two and one-half years between the date of the indictment and the date of waiver. It is clear that such a period of time is sufficient to provoke an inquiry into the remaining factors.

### (2) *Reason for Delay*

Upon the adoption of the individual calendar system, this case was assigned to me in the fall of 1970. Counsel appeared before the court on March 12, 1971 to fix a date for trial. Counsel advised the court that Fred Dornau was then incarcerated in Florida awaiting trial on a first degree murder charge in that state. Neither side (the defendants were represented by the same counsel) was anxious to proceed under the circumstances. When defense counsel pointed out that the government had failed to furnish the bill of particulars, the court fixed a date for compliance, but defense counsel urged that such a deadline was unnecessary. He stated:

> "Perhaps if it is all right with the court, I, and hopefully Mr. Naftalis [the Assistant United States Attorney] and Mr. Kelleher could come back in two weeks or so and in the meantime I will try and grab Mr. Naftalis in the corridor at some time and get some kind of a definitive position on his part."

When the court pressed to fix a date defense counsel replied, "But in fairness to the government, perhaps Mr. ———." The court, however, fixed a compliance date of July 15, 1971 with the understanding, acquiesced in by the defense, that the case would not be called again until the fall, unless the government advised that the murder charge was not presenting any reason for delay.

Defense counsel's attitude is understandable in view of the possibility that Fred Dornau's conviction might obviate a three to four week trial of his case along with the possibility that the government would also drop the charges against Peter Dornau.

This case was carried from then on as a Rule 5 exception to the circuit's rules for the prompt disposition of criminal cases. Fred Dornau was convicted of first degree murder in May 1971. His appeal was taken in August 1971 and finally argued in November 1972 after it

was transferred to a different appellate court in Florida. As of this date the appeal is undecided. This court heard nothing from either side until the government requested a conference in November 1972 to fix a trial date.

■ Given the complexity of the issues involved in the case and the desirability of conserving judicial resources through the use of a single trial, the government's reason for the delay is not unjustified. This is not the situation where there was a deliberate attempt to delay the trial in order to "hamper the defense." Barker v. Wingo, *supra* at 531, 92 S.Ct. 2182. Nor was the delay "purposeful or oppressive." Pollard v. United States, 352 U.S. 354, 361, 77 S. Ct. 481, 1 L.Ed.2d 393 (1957).

### (3) *The Defendant's Assertion of the Right*

■ It is perfectly obvious that it was to the advantage of Peter Dornau to go along with the government's inaction in this case. *Cf.* United States v. Saglimbene, 471 F.2d 16 (2d Cir. 1972); United States v. Stein, 456 F.2d 844 (2d Cir.), cert. denied, 408 U.S. 922, 92 S.Ct. 2489, 33 L.Ed.2d 333 (1972).

He failed to make a demand for a speedy trial until the conference requested by the government to fix a date for trial. At that time his hopes were dashed since the government indicated that the trial would be joint. For some inexplicable reason the government represented that it expected the murder conviction to be reversed. Even then, in November 1972, defense counsel said he would not be ready for trial until February or March 1973. The failure to make this demand is "entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker v. Wingo, *supra* at 531, 92 S.Ct. at 2192. In weighing this factor, the Court "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove he was denied a speedy trial." 407 U.S. at 532, 92 S.Ct. at 2193.

### (4) *Prejudice to the Defendant*

■ Finally we come to the fourth factor—prejudice to the defendant. The defendant has alleged that he was prejudiced by the government's delay in filing a proper bill of particulars. He argues that without the bill of particulars he was unable to make motions against various counts of the indictment, and that he was unable to adequately prepare his defense. He has had the bill of particulars since February 1972 and no motions addressed to the counts of the indictment have as yet been made. Defendant does not furnish the court with any specifics as to how he has been prejudiced in preparing his defense.

In United States v. Blauner, 337 F. Supp. 1383, 1391 (S.D.N.Y.1971), Judge Tenney indicated that a presumption of prejudice exists when the government is guilty of continuous defaults in furnishing information ordered by the court. Apart from this presumption, however, the court in *Blauner* also found that the defendant had demonstrated actual and substantial prejudice, *viz.*, two potential witnesses and a co-defendant had died and various brokerage houses had gone out of business. It is the absence of such specific allegations of prejudice by Peter Dornau that serves to distinguish this case from *Blauner*. See also United States v. Vega, 447 F.2d 698, 702 (2d Cir. 1971), cert. denied, 404 U.S. 1038, 92 S.Ct. 712, 30 L.Ed.2d 730 (1972).

It is also noteworthy in this regard that after receiving the supplemental bill of particulars in February 1972, no motion to dismiss for lack of a speedy trial was forthcoming until January 15, 1973, long after the conference in November 1972 and after receipt of notice from the court dated January 4, 1973 setting a trial date for March 5, 1973. The date of trial was fixed in compliance with the request of defense counsel at the November conference.

Weighing these four factors, it appears that the balance tips in favor of the government, and we must conclude that the defendant's Sixth Amendment

right to a speedy trial has not been violated.

### III. *Second Circuit Rules Regarding Prompt Disposition of Criminal Cases*

Peter Dornau has also moved to dismiss the indictment on the ground that the delay in bringing him to trial violated the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases, 28 U.S.C. (Supp.1972) (Second Circuit Rules). These rules were promulgated on January 5, 1971, with an effective date of July 5, 1971. They applied to cases pending and to those to be commenced in the future. Since the instant case was pending as of these dates, it is fully subject to the new rules.

Rule 4 provides that the government must be ready for trial within six months from the filing of formal charges, unless the time is extended "for good cause" under the Rule 5 exceptions. Rule 5(a) exempts the period of delay "while proceedings concerning the defendant are pending, including . . . trial of other charges . . . ." This clearly covers the defendant Fred Dornau. Peter Dornau comes within the ambit of Rule 5(e) which excludes a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run [Fred Dornau] and there is good cause for not granting a severance."

█ In the first place, no motion for a severance was ever made by Peter Dornau. As can be seen from the reference above to the March 1971 conference, he was perfectly content to let matters remain status quo. The court even suggested at that time that the government may want to sever but defendant never followed through on the suggestion. In this regard, the following colloquy from the conference held on November 14, 1972 is especially illuminating:

"The Court: My recollection is everybody agreed no severance and put the thing over until the case of

Fred Dornau was resolved one way or the other.

Mr. Bonem: I think that was a time before anybody was thinking about appeals in the murder case. It was certainly before he was tried. . . And then, of course, things have changed and Peter Dornau particularly is unwilling at this point to wait it out, if the Court will permit some other way of disposing of his case."

Secondly, there was good cause for not granting a severance. This appears to be a complicated fraud case which will take at least three weeks to try. To bifurcate the trial will double the time because of the overlapping proof.

### IV. *Inspection of the Grand Jury Minutes*

Both defendants have moved for an order pursuant to Rule 6(e), Fed.R. Crim.P., granting them inspection of the grand jury minutes. At the outset, it should be noted that we are mindful of the "long-established policy that maintains the secrecy of the grand jury proceedings." United States v. Proctor & Gamble Co., 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). At the same time, the Supreme Court has continued to confirm the trial court's power under Rule 6(e) to direct disclosure of grand jury testimony prior to or during a trial upon a showing of "particularized need." United States v. Dennis, 384 U. S. 855, 870–871, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). See also Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959). In determining whether to grant a request to inspect grand jury minutes, we are guided by the Court's declaration in *Dennis, supra* at 873, 86 S.Ct. at 1851, that:

"In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact. Exceptions to this are justifiable only by the clearest and most compelling considerations. For

this reason, we cannot accept the view of the Court of Appeals that it is 'safe to assume' no inconsistencies would have come to light if the grand jury testimony had been examined."

In the instant case, we find that the defendants have demonstrated that "particularized need" exists. On May 1, 1969, just six months before the indictment was filed, both defendants were compelled to testify before the Referee in Bankruptcy in the Ra-Dor proceedings, pursuant to Section 7b of the Bankruptcy Act (11 U.S.C. § 25). At that time, their attorney asserted the immunity provisions of Section 7a(10) of the Act. That section provides that "no testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding, . . . ." The Referee expressly indicated that it was applicable to the instant defendants because they were being compelled to testify as officers of Ra-Dor. Whereupon, Peter and Fred Dornau proceeded to testify on two occasions in May 1969.

 The defendants now point out that on each of these occasions, various government representatives were in attendance, representing, inter alia, the Small Business Administration and various contracting offices of the United States. An examination of the transcripts of the Florida bankruptcy proceedings reveals numerous instances in which the defendants testified as to matters which are the subject of the instant indictment. Certainly this factor, when coupled with the brief period of time before the indictment was filed, raises an inference that the grand jury's charges may have been impermissibly based on the testimony the defendants gave under the immunity provisions of Section 7a(10).

The government's opposition to inspection is contained in an affidavit made solely on "information and belief" by the assistant now in charge of the case that (1) the transcript of the Florida bankruptcy proceeding was not an ex-

hibit before the grand jury which indicted the defendants, (2) the FBI agent in charge of investigating this case did not know or have any contact with the government officials who attended the Florida proceedings, (3) the transcript of the defendants' testimony at the bankruptcy hearings was not used by the United States Attorney's office for this district in presenting the instant case to the grand jury, and (4) the investigation in this case was conducted separately from the Florida bankruptcy matter. These statements, unsupported by affidavits from any of the Assistant United States Attorneys or FBI agents involved in the presentation of this case to the grand jury, are totally insufficient to justify a denial of the motion. The motion to inspect the grand jury minutes is therefore granted.

## V. Severance

Finally, Peter Dornau has moved for a severance pursuant to Rule 14, Fed.R. Crim.P. His grounds for this motion are fourfold: First, he argues that the criminal proceedings against his co-defendant in Florida are not yet concluded, and thus he will be unable to participate in his own defense. Secondly, he claims that the public interest will not be served in bringing Fred Dornau to trial in this case unless his conviction in Florida is upset, and he is placed at liberty. Thirdly, he contends that a separate trial as to him will take considerably less time than trying him and his co-defendant. Fourthly, he argues a severance should be granted pursuant to Rule 5(e) of the Second Circuit Rules because there is no good cause for not granting the severance.

 Obviously none of the asserted grounds affords a basis for the favorable exercise of the court's discretion to grant a severance. In this circuit, we are guided by the principle that in order to obtain a severance, a defendant must demonstrate "substantial prejudice from a joint trial, not just a better chance of acquittal at a separate one . . . ." United States v. Fantuzzi,

463 F.2d 683, 687 (2d Cir. 1972); United States v. Borelli, 435 F.2d 500, 502 (2d Cir. 1970), cert. denied, 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971); 8 Moore, Federal Practice ¶ 14.02 [2] et seq. (2d ed. 1972).

This case falls squarely within the general rule that persons jointly indicted should be tried together, where the crimes charged may be proved against all of the defendants through the same evidence. United States v. Fantuzzi, *supra* at 687 of 463 F.2d; United States v. Kahaner, 203 F.Supp. 78, 80–81 (S.D.N.Y.1962), aff'd, 317 F.2d 459 (2d Cir.), cert. denied, Corallo v. United States, 375 U.S. 836, 84 S.Ct. 62, 11 L.Ed.2d 65 (1963). Accordingly, the motion to sever is denied.

So ordered.

## ON MOTION FOR RECONSIDERATION

This is a motion by the government for reconsideration of Part IV of this court's opinion of March 2, 1973, granting the defendants' request to inspect the grand jury minutes. The request was granted pursuant to Fed.R.Crim.P. 6(e) because defendants made a showing "that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." The possible grounds for dismissal lay in the fact that defendants had testified in bankruptcy proceedings under a grant of immunity (11 U.S.C. § 25) as to numerous matters which appear to be embraced in this indictment. The indictment was filed six months after the testimony was given in the bankruptcy proceedings. The government now contends that there is no need to inspect the minutes prior to trial because the presentation to the grand jury of evidence illegally obtained in violation of the immunity provision of the Bankruptcy Act is not a ground for dismissal of the indictment.

In Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Court considered the scope of immunity granted by 18 U.S.C. § 6002 which provides that "no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case . . . ." Similar language appears in the immunity provision of Section 7a(10) of the Bankruptcy Act. The Court in *Kastigar* held that this "use plus derivative use" immunity is coextensive with the scope of the privilege against self-incrimination.

■ Thus, we are dealing here with a right of constitutional dimension and not of competency or adequacy of testimony before a grand jury. The rule of Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) upon which the government relies is not in point. *Cf.* Jones v. United States, 119 U.S.App.D.C. 284, 342 F.2d 863, 871–873 (1964). Where the question of violation of immunity has been raised as the basis for a motion to dismiss the indictment, the courts have entertained such motions prior to trial. United States v. Meyers, 339 F.Supp. 1154 (E.D.Pa.1972); United States v. Rand, 308 F.Supp. 1231 (N.D.Ohio 1970); United States v. Lawson, 255 F.Supp. 261 (D.Minn.1966). In fact, the Eighth Circuit has observed in United States v. McDaniel, 449 F.2d 832 (8th Cir. 1971), cert. denied, 405 U.S. 992, 92 S.Ct. 1264, 31 L.Ed.2d 460 (1972):

"The Government contends that a motion to suppress the indictment is not the proper method to raise the issue of a prior grant of immunity, and that it should be raised by a motion to suppress evidence to which the grant of immunity is claimed to attach. . . . We reject the Government's contention. . . . If, as he contends, McDaniel is entitled to transactional immunity, a motion to suppress the indictment is clearly the only means of accomplishing that end. The authorities recognize that a motion to quash the indictment is the proper method of raising this issue.

8 Wigmore, Evidence (McNaughton ed.1961), § 2282(4), p. 519; Smith v. United States, 337 U.S. 137, 145, 69 S.Ct. 1000, 93 L.Ed. 1264 . . . (1949); Edwards v. United States, 312 U.S. 473, 61 S.Ct. 669, 85 L.Ed. 957 . . . (1941) . . . ." (449 F.2d at 835).

In addition, this circuit has recently stated in In the Matter of Goldberg v. United States, 472 F.2d 513 at 516 (2d Cir., 1973):

> "Despite Lawn v. United States, . . . . and United States v. Blue, . . . we do not take it to be settled that an indictment would not be subject to dismissal if a defendant could establish that it was obtained on the basis of testimony compelled from him after a proper assertion of his privilege. See Jones v. United States, 119 U.S.App.D.C. 284, 342 F.2d 863, 871–873 (1964) (en banc)."

■ The only question remaining is the procedure to be followed on motions of this character. A court has to determine whether in fact immunity has previously been granted and whether the government's indictment was impermissibly obtained from compelled testimony or its fruits. There is no dispute here concerning the first issue. The second issue would necessarily entail a preliminary hearing in which the government must affirmatively show under Kastigar v. United States, 406 U.S. 441, 453, 460, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) that it did not use the compelled testimony or the fruits thereof "in any respect," and that the evidence it did use was derived from a legitimate source wholly independent of the compelled testimony. Cf. Jones v. United States, supra, 342 F.2d at 873.

■ Inspection of the grand jury minutes is appropriate here to test the government's "heavy burden." Unless the defendant is aware of the evidence which the prosecutor has presented to the grand jury, he cannot effectively challenge the sufficiency of the claimed independent proof at any pretrial hearing.

■ The government urges that the court review the grand jury testimony in camera and compare it with the testimony in the bankruptcy proceedings to determine whether the defendants' immunity has been violated. It is clear that the court has neither the time nor the competence to proceed in this manner. The defendants are in the best position to know whether the indictment was predicated on the fruits of the bankruptcy testimony. In a somewhat analogous situation, the Court said:

> ". . . we conclude that surveillance records as to which any petitioner has standing to object should be turned over to him without being screened in camera by the trial judge. . . . Unavoidably, this is a matter of judgment, but in our view the task is too complex, and the margin for error too great, to rely wholly on the in camera judgment of the trial court to identify those records which might have contributed to the Government's case." Alderman v. United States, 394 U.S. 165, 182, 89 S.Ct. 961, 971, 22 L.Ed.2d 176 (1969). See also Dennis v. United States, 384 U.S. 855, 874–875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

The grand jury minutes in this case consist of approximately 160 pages. They should be turned over to defendants on or before April 3. If defendants wish to move to dismiss the indictment on the ground that their immunity has been violated, such motion, with adequate supporting affidavits, shall be made returnable no later than May 3. As previously noted, the trial of this matter shall proceed on May 30.

Motion denied. So ordered.