**UNITED STATES of America, Appellant,**

v.

**Peter DORNAU, Defendant-Appellee.**

**No. 350, Docket 73–2204.**

United States Court of Appeals, Second Circuit.

Argued Dec. 6, 1973.

Decided Jan. 24, 1974.

John J. Kenney, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., John W. Nields, Jr., Asst. U. S. Atty., on the brief), for appellant.

Franklin S. Bonem, New York City (London, Buttenwieser & Chalif, Bonnie P. Winawer, New York City, on the brief), for defendant-appellee.

Before WATERMAN and FEINBERG, Circuit Judges, and GURFEIN, District Judge.*

* Of the United States District Court for the Southern District of New York, sitting by designation.

FEINBERG, Circuit Judge:

The United States appeals from the dismissal in the United States District Court for the Southern District of New York, by Charles M. Metzner, J., of an indictment that charged appellee Peter Dornau with use of the mails and wire communications in interstate commerce in furtherance of a scheme to defraud investors in violation of 18 U.S.C. §§ 1341, 1343.[1] The basis for dismissal was that the prosecution, in presenting its case to the grand jury, may have made derivative use of testimony given by Dornau pursuant to a grant of immunity under section 7(a)(10) of the Bankruptcy Act. We hold that the order of dismissal is appealable to this court. On the merits, we further hold that Dornau received mere use immunity in the bankruptcy proceeding and that the prosecution's alleged derivative use of his testimony was not unlawful. Accordingly, we reverse and remand to the district court with instructions to reinstate the indictment.

I

A brief history of this litigation is necessary for an understanding of the issues before us. Appellee Peter Dornau was vice-president of Ra-Dor Industries, Inc. (Ra-Dor), which manufactured materials used in defense contracts. In May 1969, he testified at the first meeting of creditors in Ra-Dor's bankruptcy proceeding in a federal district court in Florida;[2] this testimony and the circumstances under which it was given are the key facts in this appeal. Five months later, Dornau was indicted in the Southern District of New York on 15 counts of mail and wire fraud in furtherance of a scheme to bilk investors in Ra-Dor. Early in 1973, Dornau moved, among other things,[3] for an order entitling him

to inspect the grand jury minutes. This relief was granted. D.C., 356 F.Supp. 1091, 1097–1098. Thereafter, upon Dornau's motion, a hearing was held to determine whether the Government had made improper use of Dornau's prior testimony either in presenting evidence to the grand jury or in preparing for trial. In a thorough opinion, D.C., 359 F.Supp. 684, the judge granted Dornau's motion to dismiss the indictment.

Judge Metzner proceeded on the assumption, apparently unchallenged by the Government at that time, that Dornau's Florida testimony had been compelled pursuant to a grant, under the Bankruptcy Act, of use and derivative use immunity coextensive with the fifth amendment privilege against self-incrimination. On this assumption, the judge examined the intended trial evidence in light of the Supreme Court's admonition that the prosecution bears a "heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." Kastigar v. United States, 406 U.S. 441, 461–462, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972). After careful scrutiny of the sources of this evidence, Judge Metzner ruled:

> [I]t is clear that the prospective government witnesses on this trial . . . were all discovered and interviewed without relation to anything that appeared in the minutes of the [bankruptcy] testimony.

359 F.Supp. at 686. The judge also examined for taint the evidence which the Government had presented to the grand jury. Here he found that the Assistant United States Attorney then in charge had sought, and obtained, a transcript of the bankruptcy testimony less than a month before he began to present the case to the grand jury, and had made co-

---

1. Also named as defendants in the indictment but not involved in this appeal were Fred Dornau and Ra-Dor Industries, Inc.

2. Apparently, Dornau had been designated under § 7(b) of the Bankruptcy Act, 11 U.S.C. § 25(b), as one of the corporate officers required to perform the duties of the

bankrupt and appeared at the meeting pursuant to order.

3. Dornau also moved to dismiss the indictment because of the more than three-year post-indictment delay. Judge Metzner denied this motion, finding that much of the delay was due to the adjudication of pending charges against co-defendant Fred Dornau.

pious notes on the transcript. Consequently, although Dornau was unable to point out any specific instance of taint, the judge dismissed the indictment, holding that the prosecutor may have made derivative use of the testimony in a variety of ways and that the Government had not met its burden of proving freedom from taint.[4]

## II

■ The first issue before us is whether the Government can appeal from the district court's order. Since the indictment in this case was returned in October 1969, before the effective date of the current Criminal Appeals Act, 18 U.S.C. § 3731, appealability is governed by the "elusive provisions" of the 1948 version of the Act. United States v. Weller, 401 U.S. 254, 255 & n. 1, 91 S.Ct. 602, 28 L.Ed.2d 26 (1971); United States v. DiStefano, 464 F.2d 845, 847 (2d Cir. 1972). Despite the breadth of its language,[5] the 1948 Act has been construed to incorporate the provisions of the 1942 Act. These permit appeals to the courts of appeals only in a narrow class of cases, which includes a decision "sustaining . . . a plea in abatement. . . ."[6] Id. at 847–848; United States v. Apex Distributing Co., 270 F.2d 747, 751–755 (9th Cir. 1959) (en banc). We hold that the dismissal here is appealable to this court because, in effect, it sustained a plea in abatement.

The function of a plea in abatement is "to impeach the indictment . . . without at the same time destroying the cause of action." United States v. Apex Distributing Co., supra, 270 F.2d at 753. Thus, an attack on an indictment because of a defect in the proceedings leading to its procurement, which would not necessarily end the prosecution, would be such a plea. Id. Here, Judge Metzner found that the witnesses the Government proposed to produce at trial were discovered and interviewed independently of appellee's bankruptcy testimony; the problem of taint arises only because the prosecutor read that testimony before presenting the Government's case to the grand jury. However difficult it may be to eliminate that taint, if such it was, dismissal did not necessarily terminate the cause of action. Even if dismissal was proper, the Government may be able to reindict successfully if a prosecutor, who has not read either the bankruptcy transcript or the grand jury minutes, presents the independently derived evidence to a different grand jury. See United States v. Tane, 329 F.2d 848, 851 & n.4, 852 (2d Cir. 1964) (dismissal of indictment because it was procured through the use of illegally obtained evidence did not necessarily terminate cause of action and was appealable).

Dornau, however, claims that we do not have jurisdiction over the appeal from Judge Metzner's order. Citing

4. The judge declined to speculate on the precise effect reading the transcript might have had on the conduct or thinking processes of the prosecutor. The possibility of some use was held sufficient to violate the command of *Kastigar* that immunized testimony must not be used "in *any* respect." 406 U.S. at 453, 92 S.Ct. 1653.

5. The 1948 Act provided in relevant part:
   An appeal may be taken by . . . the United States from the district courts to a circuit court of appeals . . . in all criminal cases, in the following instances:
   From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme

Court of the United States is provided by this section.
62 Stat. 845.
   An appeal lies to the Supreme Court from, inter alia, a decision "sustaining a motion in bar, when the defendant has not been put in jeopardy." Id. at 844–845.

6. The 1942 Act provided in relevant part that an appeal lies to a court of appeals:
   From a decision or judgment quashing, setting aside, or sustaining a demurrer or plea in abatement to any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this Act.
56 Stat. 271.

various decisions, e. g., United States v. Brewster, 408 U.S. 501, 506, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972), and United States v. Ponto, 454 F.2d 657, 663–664 (7th Cir. 1971) (en banc), appellee first contends that the dismissal is not appealable at all because it is based on facts not alleged in the indictment. The district court, the argument goes, went beyond the indictment to examine the prosecution's trial evidence and concluded that the Government had failed to prove that it was untainted. The argument flies in the face of Judge Metzner's finding, quoted above, that the Government's trial evidence was not tainted. Moreover, appellee's citations do not support his contention since they deal with dismissals that necessarily determined the merits of criminal charges and had the effect of terminating the prosecution altogether. In contrast, the order here did not determine or purport to determine the merits of the charges against Dornau.

■■ Appellee alternatively suggests that the dismissal in this case has the effect of sustaining a motion in bar and is thus appealable only to the Supreme Court. See note 5 supra. The argument is without merit. As defined by the Supreme Court, a motion in bar has the characteristics of a common law plea of confession and avoidance; at least for purposes of the motion, the movant admits his guilt but claims he is nonetheless immune from prosecution because of some extraneous factor such as a grant of transactional immunity or the expiration of the statute of limitations. United States v. Weller, supra, 401 U.S.

at 259–261, 91 S.Ct. 602. As we have already held, dismissal here did not necessarily bar reindictment.[7] See United States v. Tane, supra, 329 F.2d at 851 n.4.

### III

Having determined that we have jurisdiction, we would ordinarily turn directly to the Government's arguments as appellant, but before we can consider them still another preliminary question must be faced. One of the Government's principal contentions in this court [8] is that, by testifying under the 1969 version of section 7(a)(10) of the Bankruptcy Act, Dornau received only use immunity; consequently, even if the prosecution made derivative use of his testimony—which is not conceded—such use was lawful. Dornau argues that this issue is not properly before us because the Government did not make this point in the trial court. Dornau is apparently correct in the latter assertion. The Government seems to concede that it raised the issue of the scope of appellee's immunity only at the last moment in the district court and even then only obliquely by calling United States v. Goodwin, 470 F.2d 893 (5th Cir. 1972), which is discussed below, "to the Court's attention informally *after* the hearing and *before* the Court's opinion was filed." [9]

■■ Nevertheless, we conclude that we should consider the Government's "scope of immunity" argument. We undoubtedly have discretion to entertain on appeal contentions not raised in the district court. McDonnell v. American

---

7. United States v. Blue, 384 U.S. 251, 86 S. Ct. 1416, 16 L.Ed.2d 510 (1966), relied upon by appellee, is not to the contrary. To be sure, the Supreme Court there found that dismissal of the indictment because of the defendant's past compulsory self-incrimination operated as the granting of a motion in bar. But the Court so found only because of the district court's erroneous ruling that the taint was so pervasive that prosecution on the same counts was forever barred. Id. at 254, 86 S.Ct. 1416. In reversing, the Court noted that the defendant would at

most be entitled to bar the incriminating evidence and its fruits if they were sought to be used against him at a subsequent trial. Id. at 255, 86 S.Ct. 1416.

8. For other claims of the Government, see note 15 infra.

9. Reply brief for the United States, at 4 n. * *. Dornau moves to strike this footnote because it relates ex parte conduct not in the record. We deny the motion, noting that we do not rely on the information in the footnote to support our decision.

Leduc Petroleums, Ltd., 456 F.2d 1170, 1185 (2d Cir. 1972); United States v. Drummond, 354 F.2d 132, 141 n.4 (2d Cir. 1965) (en banc), cert. denied, 384 U.S. 1013, 86 S.Ct. 1968, 16 L.Ed.2d 1031 (1966). Here, the argument as it comes before us is essentially one of law; appellee points to no seriously disputed factual issues whose resolution would best be left in the first instance to the district court. Moreover, appellee's ability to litigate the "scope of immunity" issue in this court is not impaired by the Government's failure to raise it below. Finally, absent this kind of prejudice to Dornau, it is significant that the indictment charges serious crimes in whose continued prosecution the public has a strong interest. Under these circumstances, we exercise our discretion to consider the Government's argument.

■ Addressing ourselves, at last, to the merits, we hold that Dornau received only use immunity in the bankruptcy proceeding and that consequently the Government's alleged derivative use of his testimony was not improper. Section 7(a)(10) of the Bankruptcy Act, as it stood in 1969, conferred only use immunity. It was so worded[10] and had been so interpreted by the Supreme Court. Arndstein v. McCarthy, 254 U.S. 71, 73, 41 S.Ct. 26, 65 L.Ed. 138 (1920); see 1A Collier on Bankruptcy ¶ 7.21 at

1013–1015. Because use immunity is not coextensive with the privilege against self-incrimination, Counselman v. Hitchcock, 142 U.S. 547, 564–565, 12 S.Ct. 195, 35 L.Ed. 1110 (1892), section 7(a)(10) could not have been used in 1969 to compel a bankrupt's testimony over an assertion of his fifth amendment privilege. Arndstein, supra, 254 U.S. at 73, 41 S.Ct. 26. Consequently,

. . . the witness faced two alternatives under the [1969] version of the statute: he could choose to testify freely and then later claim whatever protection the statute afforded; or he could refuse to testify on the grounds that the answers sought might be incriminating.

United States v. Goodwin, 470 F.2d 893, 904 (5th Cir. 1972), cert. denied, 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973). The record in this case indicates that Dornau was informed by the referee of his constitutional right to refuse to testify,[11] and that, without compulsion, he nonetheless chose to testify, relying on the immunity granted by the Act. Such conduct hardly supports Dornau's claim that he received derivative use immunity.

■ Appellee maintains, however, that the 1969 version of section 7(a)(10) is not controlling. Noting that the section was amended in 1970

---

**10.** The 1969 version of § 7(a)(10), 52 Stat. 847, provides that no testimony given by a bankrupt pursuant thereto "shall be offered in evidence against him in any criminal proceeding . . . ." There does not appear to be any question that Dornau, though not himself bankrupt, was entitled to the immunity granted by this section since he testified at the first meeting of creditors after apparently being designated as one of the corporate officers required to perform the duties of the bankrupt Ra-Dor. See note 2 supra; United States v. Castellana, 349 F.2d 264, 273–274 (2d Cir. 1965).

**11.** The referee told Dornau:

Mr. Dornau, it is my duty to advise you that under the Fifth Amendment to the United States Constitution, a person cannot be compelled to give testimony which might be used against the person in prose-

cution for violating any laws of the United States or any State.

It is my duty to advise you that you have this constitutional right and if in the course of the questioning you are of the honest belief that the answer sought to be elicited from you does or might tend to incriminate you or put you in jeopardy and that might be used against you in subsequent prosecution for violating any laws of the United States or any State thereof, then you have a constitutional right to refuse to answer.

I also have to explain to you and your counsel here what is known as the Doctrine of Waiver, that once you commence giving answers pertaining to a certain subject that you might be deemed to have waived your constitutional rights because you voluntarily commenced to answer.

to provide use and derivative use immunity,[12] and relying on United States v. Seiffert, 463 F.2d 1089, 1091–1092 (5th Cir. 1972), Dornau argues that the 1970 amendment applies to all attempts to make derivative use of bankruptcy testimony after its effective date even if the testimony was given prior thereto.[13] We reject this argument and decline to follow *Seiffert*, which we think was wrongly decided. In enacting the 1970 amendment as part of the Organized Crime Control Act, Title II, 84 Stat. 926, 929, Congress did not have the remedial purpose, suggested by *Seiffert*, of conferring additional immunity upon witnesses who, like Dornau, had already chosen to testify under a grant of use immunity; rather, Congress intended to achieve "effective displacement of the privilege against self-incrimination by granting protection coextensive with the privilege" in order to enable bankruptcy referees for the first time to compel the testimony of witnesses who refused to testify, claiming the privilege. H.R.Rep.No.1549, 91st Cong., 2d Sess. (1970), quoted at 1970 U.S.Code Cong. & Adm.News p. 4008. Indeed, in United States v. Goodwin, supra, 470 F.2d at 903–904, the Fifth Circuit itself held that the 1970 amendment does not confer derivative use immunity

on testimony given before its effective date but sought to be used thereafter. The unanimous denial of a rehearing en banc in *Goodwin*, id. at 904 (1973), is, in view of the clear conflict with *Seiffert*, a strong indication that *Seiffert's* retroactive application of the 1970 amendment has been overruled sub silentio. Thus, Dornau never did receive derivative use immunity under the 1969 statute, a conclusion we are confident Judge Metzner would have reached had the Government properly presented the issue to him.

■■■ Appellee raises one final argument which requires discussion. He maintains that he testified on the "express assurance" that he would receive not only use but also derivative use immunity. Consequently, his argument runs, it would frustrate the policy of the privilege against self-incrimination to allow the Government to take advantage of his misconception of the scope of immunity he would receive by testifying. The argument lacks merit. The record shows that the so-called "express assurance" was not an assurance at all.[14] More importantly, it came not from the referee but from Dornau's own counsel. Dornau's reliance on the erroneous advice of counsel not claimed to be incompetent can hardly operate to convert

---

12. Section 7(a)(10) currently provides that no testimony given by a bankrupt pursuant thereto "or any evidence which is directly or indirectly derived from such testimony . . . shall be offered in evidence against him in any criminal proceeding . . . ." 11 U.S.C. § 25(a)(10).

13. Appellee also argues that § 7(a)(10) would be unconstitutional under *Kastigar* if it were interpreted to provide only use immunity. This contention is without merit. Under the 1969 version of the section, the referee had no power to compel testimony over an assertion of the privilege against self-incrimination; as we read *Kastigar*, it applies only to compelled testimony.

    In addition, Dornau cites United States v. Monia, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376 (1943), for the proposition that a witness, who testifies under a statute such as the Bankruptcy Act which specifies no pro-

cedure for conferring the statutory immunity, automatically receives use and derivative use immunity. We do not agree. *Monia* stands at most for the proposition that the witness automatically receives the immunity provided for by the statute—here, in 1969, only use immunity.

14. The only "assurance" Dornau cites is the following statement by his counsel to the referee at the creditors' meeting:

    . . . I wanted the record to show that he is appearing under Section 7–B of the Act because it is our position that thereby the provisions of 7–A–10 cannot be used against him nor could any evidence which is found as the result of testimony.

On its face, this statement is an announcement of a position which Dornau intended to take in any subsequent litigation rather than an "assurance" that he would definitely receive derivative use immunity.

what was in fact a statutory grant of use immunity into a grant of use and derivative use immunity.

Accordingly, we reverse the judgment below and remand to the district court with instructions to reinstate the indictment.[15]

15. In view of our disposition of this appeal, we need not reach other issues raised by the Government, i. e., whether the evidence presented to the grand jury was in fact tainted, cf. United States v. McDaniel, 482 F.2d 305 (8th Cir. 1973), and if it was, whether dismissal of the indictment was a remedy within the district court's discretion. The latter is a particularly important issue, which we are reluctant to decide unnecessarily. Before the district court, the Government contended vigorously that dismissal was not a proper remedy, relying on dicta in Gelbard v. United States, 408 U.S. 41, 60, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), and United States v. Blue, 384 U.S. 251, 255 n.3, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966), and on United States v. Piccini, 412 F.2d 591, 593–594 (2d Cir. 1969), cert. denied, 397 U.S. 917, 90 S.Ct. 923, 25 L.Ed.2d 98 (1970). Judge Metzner rejected this argument, relying on United States v. McDaniel, 449 F.2d 832, 835 (8th Cir. 1971), cert. denied, 405 U.S. 992, 92 S.Ct. 1264, 31 L.Ed.2d 460 (1972), and on our statement in Goldberg v. United States, 472 F.2d 513, 516 n.4 (2d Cir. 1973), that the dictum in Blue did not settle the issue. 356 F.Supp. at 1099–1100. It may be, however, that the Supreme Court's recent decision in United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), which holds that the fourth amendment exclusionary rule does not apply to grand jury proceedings, resolves the issue in the Government's favor. The Calandra Court observed in dictum:

[A]n indictment valid on its face is not subject to challenge . . . even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination.

. . .

Id. at 345, 94 S.Ct. at 618.