**UNITED STATES of America**

v.

**Joe Truman BOYD et al.,
Defendants.**

**No. 75 CR. 140(MP).**

United States District Court,
S. D. New York.

Nov. 28, 1975.

6. See note 4, *supra.*

Rosenberg, Rosenberg & Rockman, Garden City, N. Y., for defendant Mullenax, by Joseph B. Ehrlich, Garden City, N. Y.

Thomas J. Cahill, Acting U. S. Atty., S. D., N. Y., by W. Cullen MacDonald, Asst. U. S. Atty., for plaintiff.

## OPINION

POLLACK, District Judge.

Ernest Mullenax, one of the defendants in this securities fraud conspiracy case, has renewed his pretrial motions for inspection of the Grand Jury minutes, a hearing to determine whether evidence submitted to the Grand Jury was tainted and dismissal of the indictment against him. Those motions were denied before trial, but leave was granted to renew them post-trial.

On February 10, 1975 an indictment was filed which charged that Mullenax was a member of a conspiracy to obtain control of a shell corporation (subsequently named "Select Enterprises,

Inc.") without substantial assets, to artificially inflate the price of its shares and to sell, distribute and pledge shares of this shell at exorbitant prices.

At trial, the government alleged that Mullenax used Select stock which he knew to be worth less than the represented value as collateral for a $60,000 loan from the State National Bank of Alabama, for a $25,000 loan from the Town and Country Business Trust, and as additional collateral for an outstanding loan of $45,000 with the Home State Bank. A jury convicted the defendant of conspiracy to violate 18 U.S.C. §§ 1001, 1341 and 1343 and 15 U.S.C. §§ 77e, 77q and 77x and of direct violations of all these statutes except 18 U.S.C. § 1001.

■ On January 5, 1971, pursuant to his voluntary petition in bankruptcy, the defendant testified before the first meeting of creditors. His testimony touched on transactions which were before the Grand Jury that returned the indictment. In his bankruptcy testimony the defendant mentioned at least one person who was also called as a witness at the trial of this action. In addition, the financial institutions involved in the above described loan transactions apparently took part in this bankruptcy proceeding.

Under 11 U.S.C.A. § 25(a)(10)

> no [bankruptcy] testimony, or any evidence which is directly or indirectly derived from such testimony, given by him [the bankrupt] shall be offered in evidence against him in any criminal proceeding, except such testimony as may be given by him in the hearing upon objections to his discharge.

This provision, effective on December 15, 1970, clearly covers such testimony as was given by defendant Mullenax. Organized Crime Control Act of 1970, Act of Oct. 15, 1970, P.L. 91–452, Title II, § 260, 84 Stat. 931–932.

The government contends that it did not offer or use at trial the defendant's bankruptcy testimony or any evidence which was directly or indirectly derived therefrom.

Defendant argues that the government must carry a "heavy burden" to demonstrate that it did not make use or derivative use of Mullenax's bankruptcy testimony, *Kastigar v. United States*, 406 U.S. 441, 461–2, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); i. e., that the government must show that it uncovered the involvement of the State National Bank, the Home State Bank and the Town and Country Trust through legitimate, independent sources and that the proof offered to the Grand Jury came from sources other than defendant's bankruptcy testimony.

Affidavits from the Assistant United States Attorney in charge of the Grand Jury and the trial proceedings in this case assert that, while the government had possession of defendant's bankruptcy testimony, no government attorney read or made use of that testimony.

The government affidavits also declare that the involvement of the State National and Home State Banks was discovered through a 1970 SEC investigator's affidavit and that the involvement of the Town and Country Trust was revealed in a 1972 letter to the SEC from an attorney for the Trust. In addition, the government points to the record in the related civil case, *SEC v. Select*, 70 Civ. 3795, as the source for the questions asked of William Chapel, the only witness to testify against Mullenax before the Grand Jury. That record includes the 1970 affidavit.

Finally, the government affiant asserts, on information and belief, that the bankrupt's testimony, was not compelled over any assertion of the defendant's Fifth Amendment privilege and that such testimony was "given by him in the hearing upon objections to his discharge" so as to eliminate any possibility under 11 U.S.C.A. § 25(a)(10) that Mullenax's bankruptcy testimony was immunized.

■ The government's argument that the first meeting of creditors was a

"hearing on objections to" Mullenax's discharge is unavailing. Such a hearing was apparently held in August of 1972, *cf. In the Matter of Ernest Richard Mullenax*, Bankruptcy No. 19,798–B–2 (D.Kan., filed July 5, 1973), but the testimony given by the bankrupt in that hearing is not the subject of this motion. By providing in section 14(b)(1) of the Bankruptcy Act, 11 U.S.C.A. § 32(b)(1) (1974 Supp.), that the Court should fix a time for the filing of objections to the bankrupt's discharge between 30 and 90 days "after the first date set for the first meeting of creditors," the Congress clearly intended that hearings on objections to the discharge would be held well after the first meeting of creditors. *See* 1A *Collier on Bankruptcy.* ¶ 14.06 at 1273–4 (14 ed. 1975).

The transcript of Mullenax's testimony at the first meeting of creditors, which defendant submitted to this Court and which is the subject of this motion, contains no evidence that defendant actually asserted his Fifth Amendment rights or affirmatively invoked the protection of the bankruptcy immunity statute. *See United States v. Dornau*, 491 F.2d 473, 480 n.13 (2d Cir.), *cert. denied*, 419 U.S. 872, 95 S.Ct. 132, 42 L. Ed.2d 111 (1974); *United States v. Goodwin*, 470 F.2d 893, 903–4 (5th Cir. 1972), *cert. denied*, 411 U.S. 969, 93 S. Ct. 2160, 36 L.Ed.2d 691 (1973). But the issue of whether or not Mullenax nevertheless received immunity is one that the Court need not reach in light of its finding that there was no possibility of a taint from the evidence before the Grand Jury.

■■ The testimony relating to this defendant before the Grand Jury was furnished to the defendant in connection with the pretrial and trial proceedings herein. An *in camera* inspection of all the Grand Jury minutes conducted by this Court reveals unequivocally that no reference was made to and no direct or derivative use made of Mullenax's bankrupty testimony. The government's affidavits having adequately demonstrated independent, legitimate sources for the documentary evidence submitted to the Grand Jury and for the questioning of Chapel before the Grand Jury, and this evidence being the sum total presented to the Grand Jury, there is no need for a *Kastigar* hearing to explore the possibility of taint and dismissal of the indictment is not required. In addition, Chapel's testimony supplies legitimate and independent evidence sufficient to support the indictment. *See United States v. James*, 493 F.2d 323, 326 (2d Cir.), *cert. denied*, 419 U.S. 49, 95 S.Ct. 87, 42 L.Ed.2d 79 (1974).

Unlike the situation faced by Judge Metzner in *United States v. Dornau*, 356 F.Supp. 1091 (S.D.N.Y.1973)[1], de-

---

[1]. In *Dornau*, Judge Metzner ordered that defendant was to be allowed to inspect the Grand Jury minutes on the grounds that the Court had "neither the time nor the competence" to conduct an effective *in camera* inspection of the minutes. *Dornau, supra,* at 1100. Judge Metzner later granted defendant's request for a *Kastigar* hearing and subsequently dismissed the indictment. 359 F.Supp. 684 (S.D.N.Y.1973). That dismissal was later reversed on the ground that Dornau had received only use immunity under the old version of § 25(a)(10) (which is not applicable here) and the government had not violated such use immunity. *United States v. Dornau*, 491 F.2d 473, 480 (2d Cir.), *cert. denied*, 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974).

In this case, given the aid of the government affidavits, the task of searching for a possible taint is not so complex nor is the margin for error so great as to render *in camera* inspection an insufficient procedure. *See Alderman v. United States*, 394 U.S. 165, 182, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), *quoted in, United States v. Dornau*, 356 F.Supp. 1091, 1100 (S.D.N.Y.1973). The government's allegations regarding the lack of any taint were based on actual knowledge rather than "information and belief." The government affiant had handled the Grand Jury proceedings, whereas in *Dornau* the affiant had not.

fendant Mullenax has been given access to all of the evidence against him which was submitted to the Grand Jury. He has received the relevant portion of Chapel's testimony and had access to all relevant documents examined by the Grand Jury, which documents were also admitted as trial exhibits. Defendant has not pointed to and this Court cannot find any part of this evidence which might not have been derived from the independent and legitimate sources described in the government affidavits.

Accordingly, the defendant's renewed motions are all denied.

So ordered.