In the Matter of Samuel Louis
**GOLDBERG**, Appellant,

v.

**UNITED STATES of America,
Respondent.**

No. 601, Docket 73–1046.

United States Court of Appeals,
Second Circuit.

Argued Jan. 15, 1973.

Decided Jan. 17, 1973.

H. Elliot Wales, New York City, for
appellant.

Walter S. Rowland, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S.D.N.Y., of counsel), for respondent.

Before FRIENDLY, Chief Judge, and OAKES and TIMBERS, Circuit Judges.

FRIENDLY, Chief Judge:

On June 2, 1972, a Special Agent of the FBI filed a complaint before a United States magistrate in the Southern District of New York seeking the arrest of Samuel Louis Goldberg and Herbert Brand for possessing treasury bills known to have been stolen from a bank, in violation of 18 U.S.C. § 2113(c). Apparently Goldberg was shortly thereafter arrested and arraigned. On January 9, 1973, Goldberg was called to testify before a grand jury in the same district, which was investigating possible violations of federal law on that subject, and was asked in substance the questions set forth in the margin.[1] Relying on his

Fifth Amendment privilege, he refused to answer. By papers unchallenged as to regularity, the United States Attorney for the Southern District of New York, with the approval of the Assistant Attorney General in charge of the Criminal Division, requested, pursuant to 18 U.S.C. § 6003,[2] an order compelling Goldberg to testify before the grand jury and granting him "use immunity" under 18 U.S.C. § 6002,[3] and Judge Bonsal signed such an order. The order was read to Goldberg in the presence of counsel, and he was advised as to the scope of the immunity granted. Upon Goldberg's return to the grand jury, he again declined to answer the questions; after being advised of the possible penalties for non-compliance, and being instructed by the foreman to answer, Goldberg continued to refuse on the ground of his privilege against self-incrimination. Accompanied by counsel,

---

1. Q. Were you present in New York on June 2, 1972?
   Q. On June 2, 1972 did you have in your possession six $100,000 Treasury Bills and one $50,000 Treasury Bill?
   Q. On June 2, 1972 did you go to Suite 1301 at 6 E. 45th Street, New York City?
   Q. Do you know Andrew Marodin?
   Q. Do you know Herbert Brand?
   Q. Did you meet Herbert Brand at that suite on that date?

2. § 6003. Court and grand jury proceedings.
   (a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.
   (b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection

(a) of this section when in his judgment—
   (1) the testimony or other information from such individual may be necessary to the public interest; and
   (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

3. § 6002. Immunity generally.
   Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
   (1) a court or grand jury of the United States,
   (2) an agency of the United States, or
   (3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,
   and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

he again refused when similarly instructed by the judge. The latter then found Goldberg guilty of civil contempt and sentenced him, pursuant to 28 U.S. C. § 1826, to the custody of the Attorney General for the term of the grand jury, not to exceed 18 months, or until such time as he was willing to answer. Having been ordered to surrender on January 15, 1973, at 4 P.M., Goldberg appealed to this court. We heard the appeal on the morning of January 15 and stayed the surrender pending decision. We now affirm and direct surrender on January 19 at 4 P.M.

Goldberg's argument is that, despite the breadth of the words "[w]henever a witness refuses . . . to testify" in section 6002, and "any individual" in section 6003, Congress did not mean to include as a proper subject of an order to testify a person who was already the subject of a criminal complaint for the transaction into which the grand jury was inquiring; or that, if it did, this would be unconstitutional despite the Court's decision in Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

■ We see no basis for the former argument. Title II of the Organized Crime Control Act of 1970, 84 Stat. 922, 926–932, enacting the new immunity provisions, did not simply provide for the grant of "use immunity" in addition to that of "transactional immunity," in which event it could be argued that the latter might be required when questions were being addressed to a person already the target of a criminal complaint, but repealed all the previous transactional immunity statutes. The wording of the statutory provisions contains no suggestion of a limitation of the kind advanced by appellant; although he points to the word "witness" in § 6002, it seems clear that this includes a witness before the grand jury, which Goldberg surely is, even if he is also a potential defendant at a later trial.

There is nothing in the legislative history that would justify narrowing the broad language used. Indeed, such history as there is points somewhat the other way. The immunity provisions of the Organized Crime Control Act were derived from an earlier bill, H.R. 11157, 91st Cong., 1st Sess. (1969), entitled the "Federal Immunity of Witnesses Act," which had been drafted by the National Commission on Reform of the Federal Criminal Laws, established by Congress in 1966, and transmitted to Congress in the Commission's second interim report of March 17, 1969. During hearings on the earlier bill, the Assistant Attorney General in charge of the Criminal Division cited to the House Judiciary Committee as a typical situation for the grant of immunity "where there is an employee who, as an agent of a principal, is familiar with the entire transaction and the investigation is directed at that particular agent and we decide as a matter of policy that it is more important to prosecute the principal than the agent." Hearings on H.R. 11157 and H.R. 12041 Before Subcomm. No. 3 of the House Comm. on the Judiciary, 91st Cong., 1st Sess. 42 (1970). Although the Assistant Attorney General spoke only of "investigation" being directed at the agent, there was nothing to indicate that the procedure would be unavailable if the agent had already been arrested or arraigned.

■ We are likewise unable, on the facts here presented, to find any sufficient basis for distinguishing the constitutional holding in *Kastigar*. Although Kastigar was not a defendant in a pending prosecution, he argued that use immunity was insufficient to supplant the privilege against self-incrimination because of the danger that his testimony might in some subtle way be used against him in a future criminal prosecution. The Supreme Court rejected this argument, holding that the statute's prohibition of the use of compelled testimony "in *any* respect," 406 U.S. at 453, 92 S.Ct. 1653, and the "heavy burden" on the prosecution "to prove that the evidence it proposes to use [in a future prosecution] is derived from a legitimate source wholly independent of the compelled testimony," *id.* at 460–461, 92 S.Ct. at 1665, effectively eliminated any

such risk. While these risks may seem more immediate and less theoretical to Goldberg, we must accept the Court's confidence that use and derivative use immunity will in fact prove to be coextensive with the privilege against self-incrimination.

■ We would be greatly troubled by what has happened here if the Government were seeking an indictment of Goldberg from the grand jury before which he is being asked to testify. Although the order to compel testimony might be valid, we would have most serious doubt about the validity of such an indictment. Despite any instructions from the judge, it would be well nigh impossible for the grand jurors to put Goldberg's answers out of their minds, *cf.* Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and testimony compelled by the order would thus "be used against the witness in [a] criminal case," *cf.* Kirby v. Illinois, 406 U.S. 682, 688–689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), in defiance not only of 18 U.S.C. § 6002 but of the command of *Kastigar* that the immunity must be "coextensive with the scope of the privilege." 406 U.S. at 449, 92 S.Ct. at 1664.[4] But the Government represented to us in open court that the grand jury before which Goldberg has been directed to answer questions will not be asked to indict him.

■ Thus, we conclude that there is no statutory or constitutional bar to prevent the United States Attorney from

compelling a potential defendant in a related proceeding who has been granted immunity under 18 U.S.C. §§ 6002 and 6003 to testify before a grand jury which is not being asked to indict him. If Goldberg now answers the questions and the Government should seek to pursue him further, its burden of showing that it is not using the compelled testimony "(or any information directly or indirectly derived from such testimony or other information)" in "*any* respect" will be substantial,[5] as we warned the Assistant United States Attorney at argument. But that question is not now before us, and may never be.

Affirmed.

OAKES, Circuit Judge (concurring):

I concur in the majority opinion.

I share the fears of Mr. Justice Marshall expressed in his dissent in Kastigar v. United States, 406 U.S. 441 at 469, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), that the "heavy burden" on the prosecuting authorities to prove that their evidence is untainted may often prove illusory. I therefore am reluctant to extend either the immunity statute (18 U.S.C. §§ 6002, 6003) or *Kastigar* to the present case where the witness before the grand jury has already been arrested. Neither in logic nor in legislative history nor in practical effect, however, is there any legitimate distinction between a witness who has not yet been arrested and one who already has been. Thus, with reluctance I feel bound by *Kastigar* to concur in the majority opinion. I do so, seconding with enthusiasm the suggestion made in footnote 5.

---

4. Despite Lawn v. United States, 355 U.S. 339, 350, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), and United States v. Blue, 384 U.S. 251, 255 & n. 3, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966), we do not take it to be settled that an indictment would not be subject to dismissal if a defendant could establish that it was obtained on the basis of testimony compelled from him after a proper assertion of his privilege. See Jones v. United States, 119 U.S.App.D.C. 284, 342 F.2d 863, 871–873 (1964) (en banc).

   We have held that the privilege does not protect against merely being called upon to appear as a witness before a grand jury. United States v. Winter, 348 F.

2d 204, 207–208 (2 Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965).

5. Without endorsing everything said in Note, Standards for Exclusion in Immunity Cases after Kastigar and Zicarelli, 82 Yale L.J. 171, 181–188 (1972), we would think that prosecutors, both in their own interest and in fairness to the defendant, would do well to consider the certification of evidence available prior to the compulsion of testimony, proposed at p. 182. See also The Supreme Court, 1971 Term, 86 Harv.L.Rev. 1, 187–189 (1972).